We will conduct oral argument this morning. The first case is Bruce v. Ogden City Corporation 22-4114. And we'll hear from Mr. Garrett. Good morning. May it please the court. My name is Aaron Garrett and I represent the appellant Douglas Bruce. Do you mind, just to make sure our system picks it up, if you just raise that mic just a bit. Thank you. Sure thing, no problem. Is that better? Anyway, as I was saying, my name is Aaron Garrett and I represent the appellant Douglas Bruce. Thank you for the opportunity to be here. And it's nice to see the new attorneys be sworn in and be reminded of our obligations here. And I do want to say before we get too far down the road, I want to thank my opposing counsel here, both before this court and in the district court. They were always highly professional and I appreciate that in litigation. It's not always, but is mostly the case. And there's another attorney, Mr. Noel, who I in particular appreciate his professionalism while we were handling this case. That's lovely. Thank you. You're welcome. Thank you, Aaron. Well, the court's read our briefing. My client is the owner of a piece of property in Ogden, Utah. It's one parcel, but it has two street addresses, 3166 Grant Avenue and 3172 Grant Avenue. On the property, there are three buildings, two duplexes and kind of a cottage house in the back of the 3172 Grant Avenue house. This litigation in particular concerns the 3166 Grant Avenue duplex, which was ordered by the city, along with the cottage in the back, for my client to keep them vacant from any renters due to a series of zoning changes, what we call down zoning in our briefing, that ultimately resulted in the buildings falling into disrepair and there was a fire in one of the units. And in the late 2019, early 2020 time period, the city ordered my client to either tear the building down or they were going to do it for him and charge him for it. And so that demolition order dealt with only one of the two duplexes, is that right? That's correct, Your Honor. In the other duplex, the resolution, such as it is between my client and the city, is that there's currently tenants in both of the duplexes. He's able to keep both of those units rented until one of them moves out, at which point he can only rent one of the duplexes in the unit. But yes, the order for this case relates specifically to that 3166 duplex, which has been ordered to be demolished, hasn't been demolished yet. When you look at diminution of value, and you've said that we're really dealing with one parcel, is that right? Yeah, technically. With three buildings? Yeah, excuse me, Your Honor. Technically, if you were to look at the county plat, it would just show you one box. And so if we're talking about loss of value for your client, don't we look at the rest of the economic value of the parcel? That is, you have the other duplex and the cottage? That's a fair point, and I think that's what makes this case unique, in that we are asking the court to take a practical view of the property. We're talking about two different buildings, two different addresses. They're not separated, but what my client has been ordered to do is tear the building down and leave that part of the ground fallow, vacant. He can't rent it, he can't build another building on it, because the city has said, you already have too many buildings as it is. Even if you were to tear this building down, there would still be the building in the back that we think you need to also get rid of or address in some manner. And so you could take, I think, a formalistic look at this property and say, well, this property has another building on it that he's able to rent at least one of the units on, currently two, and so there's still some economic value to the property. But I think that would be an overly legalistic approach. Isn't that what the Supreme Court told us to do in Murr v. Wisconsin? I don't... Wasn't that exactly the issue in Murr, where the court was grappling with, what is a piece of property? And it laid out a three-part test. Maybe it was formalistic, maybe it was impractical, but I think we would need to follow that, wouldn't we? Well, certainly, if you think there's a Supreme Court case that governs this decision, you'll... But do you disagree with that? No, no, I don't disagree with that, Your Honor. Well, doesn't this whole case, as Judge Bagrat points out, doesn't this whole case turn on the definition of the unit of property at issue? And it seems to me, when you say that we're really talking about one parcel, and you include in that all three buildings, that doesn't help you here, because you still have value in the property. You still have a rentable building or buildings, right? Well, there's one unit in one of the buildings that is able to be rented, and at the point where the second tenant moves out, as I explained. And that's enough, isn't it, under Supreme Court authority? It has to be a complete taking, a total taking, and you've only argued a total taking. For example, you didn't even attempt to argue the Penn Central factors here. That's correct, Your Honor. We are arguing a total taking. Okay, so under a total taking theory, there has to be no economic value left of the property. And my client's response on this point is that the fact that it was given a separate address and functions as its own stand-alone building, although it's been a parcel that's been identified as one parcel since I think it was 1907 when these buildings were originally built, that the fact that it has this separate identity, this 3166 address has a separate identity from the other parcel, 3172, should be sufficient to find that the demolition order is a total taking for that address and that part of the property. You know, I read your brief as arguing and saying repeatedly a single parcel, one parcel, with three buildings on it, and you started your argument today with that way. Well, the facts are what the facts are, Your Honor. I'm not going to say there's two parcels when there's not. Well, what case should we rely on if we can somehow ignore MIRROR and go your route? That is, I guess you're looking for a case that says if you have a building with a separate address and it does not matter how the city or any other entity has defined the parcel, that we could go with your side of the argument and say that there's a total taking. I don't have a specific case to cite to you on that point, Your Honor, and it may be that the court here is bound by the decisions that have been made by the Supreme Court, and we may need to preserve this argument for further appeal. But at this point, I think that the Lucas case, which said that once you are required to leave your property economically idle, that the owner of the property has suffered a taking. And that's what's being ordered here by the city. My client's being ordered to keep this address, 3166, economically idle, can't do anything with it other than, I guess, maybe have a lawn that he mows and earns no income from having. And so that should be sufficient to be considered a taking under that case. Can I ask you on the claims that were originally raised, do you concede now that the only claim that isn't barred by the statute of limitations is the 2020 demolition order? No, we don't concede that, Your Honor. I think that there is a long history with this parcel, and the regulations that the city has imposed on it through its ordinances and also through its code enforcement have built up over a significant period of time to the point where we were faced with the mayor's order of demolition in, I believe it was March 2020. So you're essentially arguing a continuing injury? Is that where we're going here? I've wrestled back and forth with how to exactly characterize it because it is sort of difficult, but... Because there was no timely challenge to the ordinance when it was passed. There was no challenge to the 2009 notice when it was received. That's correct. And my client complied with those zoning regulations that were imposed on him by the city. And the reason that I... I think it's just background historical information for how we got to the point to where the city ordered the building to be demolished. Let me make sure that I understand what you just said because that's what I had understood you to say in the reply brief, and that is that everything that happened prior to the demolition order had not caused any injury. And so it was only the demolition order that inflicted any injury. And so the actions of 1951, 84, 2000, 2009, those are a continuing injury or... I want to go back to Judge McHugh's question. You're really not claiming that those were tortuous or wrongful or unconstitutional actions. It's just background for what did inflict injury is the mayor's demolition order. That's right, Your Honor, and the point of... and arguing here is the demolition order. Okay. The background as to what happened between my client and the city explains how the building got into the condition that it's in and why my client didn't necessarily make the repairs that were ordered by the city because they were asking him to fix a building he could never rent and he didn't want to... So the only thing we need to deal with is the demolition order. This was a wrongful action. That's correct. And you're not challenging the ordinance and you're not challenging the notice. We're not challenging the ordinances in terms of... To the 2000-73 ordinance. Are you challenging it? We're not challenging that ordinance because we believe that we were... my client believes, and I think it's correct, that he was grandfathered in. And that all of this that was done to him since that ordinance was entered never should have happened because his property was, I think, explicitly grandfathered in and admitted by the city in its deposition that he was grandfathered in. They tried to do some administrative work on their end to require him to fill out some paperwork to maintain his grandfathering, but the district court, in its opinion, and I think the city might acknowledge that those were not legal requirements. That if you're grandfathered in, you're grandfathered in. So no, we're not challenging that order. We're challenging the demolition. And all of that background just explains... Well, there were a number of changes, a number of downzonings, if you will, and I think perhaps he was grandfathered in for some of them, but not all of them. Am I wrong on that? Yeah, I do think you are, Your Honor. I believe that he was grandfathered in under... Under everything. 52-84 and then the 2000-2001. Okay, and he didn't have to do anything in order to be compliant. Yes, that's correct. Like I said, the city wanted him to fill out some paperwork to maintain it, but it was not a legal requirement that he do so. Thank you. And so we're not necessarily challenging those prior orders, but they culminated in the unconstitutional order that we're challenging. We didn't get into the due process arguments that my client is also putting forth regarding the hearing that was before the mayor. Perhaps that's because it's not of significant interest to the court, but I do think that those are relevant and important issues that should be addressed by this case. Was there any evidence of bias on the part of the mayor? Did he have any financial interest in the outcome of this down zoning? There's no financial interest. His salary wasn't tied to it or anything like that. But I don't think that that's what's required under the Ward v. Monroeville case. I'm running out of time, so I'll say that we think the city's history of wanting to demolish the building is what caused the issue between the fairness and partiality of the mayor. Thank you, Your Honor. Thank you. We'll hear from the appellee. Good morning, Your Honors. Thank you for allowing us the opportunity to argue this morning. I appreciate counsel's arguments and the court's questions. We have a number of issues related to this matter. As a threshold question, the time-barred nature of the claims is important to focus in on what parts of it relate to what was alleged in the complaint. The complaint is kind of a patchwork. As the district court outlined in its order, it was trying to understand what was the constitutional violation and when did it occur. The complaint does not outline that clearly. We can even see that that is still being wrestled with by the appellant here. We have an ordinance that happened in 2001 in January. Subsequent to that ordinance, we had a number of administrative and then enforcement actions associated with this property. As the court has noted this morning, it is one parcel. The legal standards that apply relate to that one parcel. So, the 3166 building, which now things have distilled to the point where the demolition order relating only to that building are what's at stake or what is being discussed at issue. It is not a regulatory taking as associated with that particular building to require its demolition. That legal fate of that structure at 3166 was set in 2001. There was no challenge to the ordinance. There was a mechanism for that to be challenged. There is no evidence in the record of that ordinance being unlawful in any way. In 2001, the legal fate of 3166 was determined. You then come forward to 2009 when you have essentially a reiteration of the city enforcing that with regard to this parcel and that particular building. There was no challenge to what occurred in 2009. No action was taken. There were remedies available. Nothing was pursued. You come forward from that and the granular nature of what happens with the property and specifically 3166 is important for context when we review the demolition order. The property became dilapidated. It became inhabited by people who were unauthorized to be there. There's trash. Ultimately, we see there's the risk that came to be true for fire which was associated with someone setting some form of fire in the structure which then led to the structure being compromised. We have a failed ceiling. We have a very unsafe condition here. We have a public nuisance that, again, the record has no dispute on the facts with regard to this. We have law enforcement repeatedly called to the property. So 3166 as a building has become a public nuisance and is a public safety hazard. Did you put in any evidence showing for the public nuisance portion of that? Yes, Your Honor. In the appendix in Volume 4, we have at page 31 evidence unrebutted with regard to those, that history with that property. We have in Volume 1 of the appendix at page 222 through 36 and at 265 through 70, again, unrebutted evidence relating to the history and condition of the property as it existed early in the year 2020. That proceeds then to a March 6th, excuse me, that proceeds to a February hearing, notice of a hearing that occurred in early 2020. Notice was given, attendance by the appellant and legal counsel with evidence and argument made. So there was no concern with procedural due process. Ultimately, the challenge is made to the mayor being involved in that process. And as the question was posed with regard to was there some pecuniary interest, some personal interest, there was none and there is no evidence of any. Applying the summary judgment standard, we answer that question in favor of appellees here where the mayor was lawfully participating in that process under ward. So, with regard to a regulatory taking, there was some question and answer with regard to are the claims made that it's a non-categorical taking and we apply then the Penn Central standard or is it being only argued that it's a categorical taking and we look only under Lucas. I believe that the concession was made today that it was only being argued under a categorical taking which we know under Lucas and subsequent authority but in particular that Supreme Court guidance, it is not a regulatory taking qualifying as a constitutional violation when you have a remaining financial benefit to be gained from the property. It did not lose all of its value. So, you're essentially saying that the plaintiff loses here once the parcel is defined, that is the entire parcel is defined as the unit of property at issue and once you have that concession, there's no total taking. Yes, that concession is a threshold question that determines the matter and when we look at questions of title and arguably the value of the property if it was to be sold, the conveyance is going to be for that parcel, that is the title. So, the parcel is not something you can start to break down as we saw in the reply brief, it was emphasized repeatedly that 3166 is the matter but also that the law when applied to 3166 is 100% of that building is gone. Thus, we qualify. But that is not the legal standard. Let me play devil's advocate with you on this point. Murr versus Wisconsin lays out, I think, a legal test. I think you just alluded to the fact that that is not the legal standard. We, the adjudicators of the law, are generally charged with applying Supreme Court precedent. So, he is arguing that the 3166 duplex is a separable unit that was completely taken under Lucas. Is it our responsibility or why isn't it our responsibility to apply Murr versus Wisconsin in the first instance to apply the legal standard that wasn't applied and to determine whether or not the appropriate unit of property for Lucas analysis is the combination of the two duplexes of 3172, 3166, and the cottage or is it just the 3166 duplex? Why shouldn't we adjudicate and apply Murr versus Wisconsin in the first instance? I think that would run afoul of Lucas. I think it would also run afoul of the Palazzolo case. And then there's progeny under that, not all of which is going to be in this circuit or Supreme Court case, but that case looked at the question and said that 93% loss in the value was not sufficient to apply Lucas. It was not a categorical taking and that also guided us towards a review of the entire property for residential use purposes. Here, we're not even close and frankly there's no evidence to even come to the number for whether it's a percent plus or minus the 93% that was in Palazzolo. But that's all, the 93%, you know, that argument is the antecedent question is what is the unit of property? So we could say, theoretically, well, there was 93 or 99% of the value of the property left but only after there's a judicial determination of what is the unit of property. So if your answer is well, 7% still doesn't constitute a Lucas taking, I'm not sure that that vitiates our responsibility to apply Murr v. Wisconsin. I believe that the Supreme Court when it says all and in reference to the property when you're talking about residential real property, it's the parcel. And if you abandon that anchor to what the realities of real property and title are, there will be, I think, disorder as opposed to following precedent and early order. So what are you saying? We rely then on what the city says the parcel is? I think we rely on what the appellant has conceded the parcel is. An address does not inform the question of the property. And so the overlay of two addresses in these multiple structures get off the field, as it were, with regard to the analysis for what the property is to determine if all value. And I think we can't lose sight of the fact that there was no evidence to measure any of these questions. And that was a fatal flaw under... Well, that's the Penn Central side of it, and I don't think we have evidence. I agree with you there. The diminution of value, I think that'd be hard for us to analyze in this case, because we don't have the information. So I think we're pretty much stuck with the Lucas question of the total taking. And I think we can't lose sight of the fact that these claims were... This was a legally decided fate in 2001. If we're to find the moment... So are you trying to argue that even the condemnation or the order is barred? It was determined in 2001, that outcome. But that's not... My question is, is the reason you're pointing to 2001 is because you think that somehow it's barred. I believe there's a merited argument for a time-barred application to all claims. Now, alternatively... Okay, so if we disagree with you and we think we've got a remaining claim on the demolition order, then the question of whether there's been a total taking, I think you've already agreed, turns on whether this is a single parcel. And it is a single parcel. And independent of that question is then what we're guided to through Belterre. And I would even say, once we start discussing substantive due process, we have the Crider and the Klen case, both from this circuit, where there is a police power that is authorized under the Constitution. And in context, 3166 became an unlawful structure because it was a public nuisance and it was a safety hazard. How long were they grandfathered in? All the downzoning that happened? There was a question earlier about whether or not Mr. Bruce was grandfathered for all those downzoning actions. Was he? So there was a downzoning to single family residential under the 2001 ordinance. There was the opportunity to have a non-conforming use thereafter. There was never a satisfaction of the requirements, both de jure or de facto, with regard to maintaining the non-conforming use. We see that the water was turned off at the structure 3166 in 2003. So I think what you're saying right now is an answer to my question, but it's not a direct answer. I think what you're telling me is that they were grandfathered in initially and after that they had to qualify as a non-conforming use. That is correct. Okay. And the appellant did not qualify in a timely manner with regard to the non-conforming use as we come forward. Procedural due process, substantive due process, I want to cover those even though we didn't hear a substantive argument on that. There was notice. There was an opportunity to be heard specific to the demolition order, which if that's the focus, there can be no question that there was procedural due process on that. The hook then for the appellant is this question about the mayor, which we know under Ward and the lack of any evidence satisfying some standard that would mean a violation there, there is no procedural due process with regard to that point. Substantive due process here is going to again get to that Crider and that Klen analysis where we're looking at was it highly outrageous and does it shock the judicial conscience that a building that is structurally unsound is vandalized, is occupied consistently by those not authorized to be there ever since the utilities were no longer provided to that building going back to 2003. You have that chronic dangerous condition that leads to a demolition order. Does that demolition order with that undisputed evidence shock the conscience? I would say it does not. It is not highly outrageous. There is not an arbitrary act that as the court termed it in Crider, this circuit used the language reasonably conceivable rational basis and I believe there is absolutely undisputed a reasonably conceived rational basis. So with that, there are no claims under 42 U.S.C. 1983 because there has been no constitutional violation. Numerous concessions, a record that's void of evidence that would satisfy the required elements for a constitutional violation and with that, all of Appellant's claims were properly dismissed and I believe the district court should be affirmed. Unless the court has any other questions for me, thank you. Thank you. All right, I think the Appellant doesn't have any rebuttal time left. That's right. Thank you very much. But thank you counsel for both sides. We appreciate your advocacy. This matter is submitted. The next case that we'll hear when counsel are ready is...